Oesterlin v. Cook County Sheriff is the next case. Judge, this matter comes before the court on appeal by Mr. Oesterlin and we're asking the appellate court to review the decision by the trial court judge, reconsider the plaintiff's arguments that are set forth and cross motions for summary judgment that were filed, particularly plaintiff's motion for summary judgment, as well as the supporting documents and responding cleanings which are part of the docket in this case. We're asking the court to reverse the ruling of the district court. We're asking the court judge, members of the panel, that plaintiff's summary judgment motion be granted, that the matter be remanded for trial on the issue of damages, or alternatively that the court find that summary judgment's votes should have been denied and the parties and the cause remanded in this matter for trial. The appeal raises several different issues which I would like to just comment on quickly and then leave time for rebuttal and answering any questions that the court might have. The first one is the importance of the case of Taylor v. Dart that we have cited and trial court judge has cited. There's also a case of Lopez that is important in this setting as well, as well as a recent case of Matthew Borel, G-O-R-A-L, versus Thomas Dart that the Illinois appellate court just decided in June 19, 2019, which deals with this issue, or issues I should say, and that's the issues and doctrines that were enunciated by the appellate court of de facto officer and what that constitutes, the doctrine as to exhaustion of administrative remedies, as well as the futility exception that would apply to both. In the Taylor v. Dart case, the court found that the Sheriff's Merit Board was indeed illegally constituted and not in keeping with the requirements of the county's quote, the state statute that governs the appointment of the members of the Sheriff's Merit Board that determine what disciplinary hearings or terminations should be recommended to the Sheriff. It is important to note, members of the panel, that the Sheriff hires, that the Sheriff fires. Yes, the Merit Board provides for procedural due process in terms of allowing the accused employee of the Sheriff's office to present their evidence, but the Sheriff is the one who hires, decides to hire, and then ultimately decides to fire an employee. In this case, Mr. Oseling was hired in 2003. In 2007, he began to, in a written format, report the misconduct of co-workers at the Skokie Courthouse where he served as a court deputy. Those written reports of gambling on the job, using the equipment improperly, betting on other sport events, smoking on the job, eating on the job, falsification of timesheets went unanswered. In 2008, Mr. Oseling decided to report this to a local TV station, which it did in fact run a story as part of their I-team report on these proceedings at the Skokie Courthouse. Rather than disciplining the people who were violating the Sheriff's rules, an investigation of Mr. Oseling was begun by the Sheriff's office, and in fact, he was found or have alleged to have misused or improperly used a lead system, which is a database system to access certain information about individuals. He was the only one that was ever investigated or charged with that violation, and ultimately that led to his dismissal pursuant to the merit board action in 2012. He was dismissed retroactively as of December of 2010. Counsel, didn't he take the gambling accusations to the media after he was already under investigation for two incidents of misusing leads? Yes, and it's an important distinction that he was not on the job within Mr. Oseling's official duties, that this was a speech by a private citizen when he was not in the performance of his official duties as a... But the point here is causation. How can it be retaliation when he was under investigation for misconduct? He was already under investigation at the time he engaged in what you're calling protected speech. Well, the investigation really didn't take place in full until this Channel 7, I believe it was, piece ran on local news. That's when they went back initially two years and then ultimately five years in trying to come up with information or documentation or any infraction regarding Mr. Oseling's job performance that would justify taking disciplinary action against him, which they did do. And for the same kind of use of the lead system, nobody else in fact was singled out for that kind of treatment. So it clearly... You have evidence that others were using leads and not being investigated or punished for it? There was evidence of that, yes. The point here in this case, Judge, with respect to the cross motions for summary judgment is that a trial judge engaged in the weighing of facts, which should not have been done. That is for the trial judge or the jury to weigh the facts ultimately if the case proceeds or when it proceeds to trial. In this case, the trial judge engaged in weighing the facts, weighing the evidence, and we believe misinterpreted the evidence that the plaintiff has presented, both in terms of the second as well as other documents, pleadings, motions, and evidence that was presented. This is an issue that presented a factual dispute that should have been decided by the trier of fact, not on a motion for summary judgment. And we believe that the court ignored the ruling in Taylor and also subsequent rulings that took place after trial judge's decision in the case of Lopez and in the case of recently Gorel, where the doctrines that were enunciated in those cases, mainly the de facto officer doctrine and the exhaustion of administrative remedies doctrine, did provide for an exception that, such as in Taylor versus Dart, where the court ruled that the board, the marriage board, sheriff's marriage board, was illegally or unconstitutionally constituted, are void. And the judge- That sounds like an argument that could have been raised in the state litigation, but wasn't. How can it be raised now? The ruling of the state court in this particular, in these string of cases, actually dealing with the constitution of the sheriff's marriage board, we believe are among the cases- No, you're not getting my point. Your client litigated in state court about the decision of the marriage board. True. And lost. Correct. This argument about the composition of the board could have been raised in that litigation, and wasn't. Why can it be raised now? Because they would have fallen under the futility exception, which the Seventh Circuit provided for, because if the board has already declared void and improperly constituted, it does not have to be re-litigated each and every time. And in fact, in this- I don't get it. It's a pretty fundamental principle, that you have to raise all of your points in one case. You can't split your claims. Raise some points in one court, other points in another court, and that's a rule followed by Illinois. Under Section 1738, we just have to apply the rule followed by Illinois. Right. And members of the court, in this particular case that was litigated in front of Judge Zagel, Judge Zagel found already that plaintiff did not have- I'm not asking about anything Judge Zagel did. I'm asking why, under the Illinois Law of Preclusion, you can split your claims. Well, which claim are you talking about? There are a number of different claims. Oh, I have already asked you. This concerns the argument that the merit board was improperly constituted. Why didn't that have to be raised in the state litigation? It was. You raised it? It was raised by other litigants. No. Because we were arguing- Did you raise this claim? There are two possibilities. One is, this claim was raised by your client in the state litigation and resolved adversely to him. In that event, it's barred by the law of preclusion. The other possibility is that it was not raised at all in the state litigation. And then it's barred by the law of preclusion. Am I missing something about Illinois law? No, Judge. I think you're not missing anything about Illinois law. What the plaintiff brought in this particular case before the court, before the trial judge, were constitutional violations of due process and procedure. It doesn't matter what the legal theory is. You have to raise all of your legal theories in one bit of litigation. And I would argue that- That's the principle. Now, if there is some exception in Illinois law to that principle, you need to tell me what it is. All of the arguments, Judge, that the, and in fact, raised in the second amended complaint, particularly as we've stated in our reply, paragraph six, this is docket number 64. We also raised the arguments in other accompanying- Okay, thank you very much. Thank you, Judge. Ms. Orey. May it please the court, my name is Kathleen Orey. I represent Tom Darton's official capacity at the Sheriff's Department. You're going to need to raise your voice. You will find that that microphone doesn't magnify very much. And this is a very big room. The record demonstrates that the Cook County Sheriff's Merit Board, who is not a party to the case, terminated a plaintiff after a hearing and determining that the plaintiff, Wayne Osterlin, violated the lead's policy after he had warned not to and he lied about it. The plaintiff alleges in his second amended complaint, a 1983 discrimination retaliation claim, alleging that other unidentified individuals also improperly used the lead system but were not investigated. The lower court correctly entered summary judgment against the plaintiff for three reasons. One, plaintiff, a white male, is not a member of the protected class. And as a public sector employee, he cannot proceed under a class of one theory. Two, plaintiff cannot sustain a first amendment claim. As Judge Barrett just noted, he made his statements to the media after he was already under investigation for the lead's use. And also, the plaintiff cannot establish that the reason he was terminated was pretext. And three, the lower court properly declined to entertain arguments about the composition of the merit board, as the merit board is not a party to the case and the plaintiff never brought an administrative review claim challenging the merit board composition in the federal court. And Judge Easterbrook, as you just noted, the plaintiff did not raise such allegations in the state court proceedings either. Before we get further into these arguments, I think it's important to address the history of this case. The plaintiff misused the lead system in 2007, and as a result, an OPR investigation resulted, and the merit board had a hearing in 2012. The plaintiff appealed the merit board ruling through the circuit court and then the court of appeals, and the plaintiff filed this lawsuit in 2014. The first time the plaintiff ever mentioned going to the media was in his statement of facts in summary judgment on May 30th, 2018. He never mentioned it in the state court proceedings. He never amended his complaint to include a First Amendment claim. And he never- What do you mean? Your brief says that he, quote, did not plead a First Amendment claim. Is it your position that a complaint has to identify the legal theory on which the suit rests? That is not my position, as you just discussed. Well, what else does it mean to plead a First Amendment claim? He never stated internal complaints to the sheriff's office would not constitute protected speech. While going to the media could, in theory, constitute protected speech, he did not allege- He alleged what happened to him. The fact that the complaint did not refute a possible defense is not a failing of the complaint. It's also black letter law that complaints need not anticipate and ground defenses. Correct. But the record is silent as to the plaintiff's theory that anyone who was investigating him, like a supervisor or anyone at the mayor board, was aware that he had made these complaints to the media. And both Kristofek and Connor, which we cited in our briefs, note that you need to have a causal connection. And because the record is silent, as to anyone knowing- What's in the record is important at summary judgment. But it's not what needs to be in the complaint. You don't have to plead evidence. You don't have to plead facts. You plead claims. I agree. And the trial court addressed any possible First Amendment claim in his order discussing it. Right. That I understand. Why don't you just stop with the fact that the district court said what was needed about the First Amendment? This attempt to say the complaint had to include more is highly problematic. As I said, the Court of Appeals said something like that three years ago and got summarily reversed for its troubles. Complaints just don't have to plead law, identify legal theories, plead facts. No, it's not the way the system works. Illinois works that way. Illinois is a fact-pleading state. The federal courts are not. Sure. The record demonstrates that no one that was involved with the investigation of the Leeds youth or at the merit board was aware that the plaintiff made complaints to the media. So there's no causal connection. For his 1983 claim, he has one claim, which doesn't matter at summary judgment. But he pled discrimination, retaliation, and plaintiff a white male in summary judgment responding to material facts agreed that he was not alleging a claim under a protected class. He was merely proceeding under a class one theory. And Inquis has precluded that theory for a public sector employee. And because there's no constitutional violation of equal protection, he also cannot state a Monell claim. Plaintiff's counsel spent some time talking about the Taylor decision and Lopez and Gorel. But Judge Easterbrook, as you correctly noted, this was not presented to the lower court. And as a court of limited jurisdiction, the lower court was correct to not entertain such arguments. If this panel has no further questions, I will cede my time. And I ask that you affirm the lower court. Thank you very much. The case is taken under advisement.